**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EDWARD ZYBURO, | ) | |
| | ) | Case No. 12-cv-06677 (JSR) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN OPPOSITION TO |
| v. | ) | PLAINTIFF'S MOTION FOR CLASS |
| | ) | CERTIFICATION |
| NCSPLUS INC., | ) | |
| | ) | |
| Defendant. | ) | |

---

**MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO**
**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

---

## <u>TABLE OF CONTENTS</u>

INTRODUCTION…………………………………………………………….   1

STANDARD………………………………………………………………..   3

ARGUMENT………………………………………………………………   4

     I.      The Class Action Cannot Be Sustained Because Plaintiff
            Lacks Article III Standing.             5

     II.     The Proposed Class Is Not Sufficiently Ascertainable for
            Purposes of Preliminary Certification.          10

     III.    Plaintiff's Claims Are Neither Common Nor Typical
            of the Proposed Class.            10

     IV.    Plaintiff Has Failed to Demonstrate that He Is Familiar
            With the Facts of this Case Sufficient to Satisfy
            Rule 23's Adequacy of Representation Requirement.    13

     V.      The Predominant Issue of Fact is Undoubtedly One of
            Individual Consent.            15

     VI.    Plaintiff's Willfulness Claim Is Not Appropriate for
            Class Resolution.            17

     VII.   The Class Action Device Is Not Superior in this Case
            Where Defendant's Potential Liability Would Be Enormous
            And Completely Out of Proportion to Any Harm Suffered
            By Plaintiff.            18

CONCLUSION…………………………………………………………..   20

CERTIFICATE OF SERVICE………………………………………………...   21

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Allen v. Wright* (U.S. 1984) …………………………………………………… 6

*Amador v. Andrews* (2d Cir. 2011) …………………………………………….. 5

*Amchem Prods. Inc. v. Windsor* (U.S. 1997) ……………………………………….. 4, 15

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds* (U.S. 2013) ………………………….. 17

*Buonomo v. Optimum Outcomes, Inc.* (N.D. Ill. March 17, 2014) …………………… 12, 13

*Byes v. Telecheck Recovery Servs.* (E.D. La. 1997) ……………………………………. 13

*Butterworth v. Quick & Reilly, Inc.* (M.D. Fla. 1997) …………………………………. 14

*Cellco P'ship v. Wilcrest Health Care Mgmt.* (D.N.J. May 8, 2012) ………………….. 8

*Cellco P'ship v. Dealers Warranty, LLC* (D.N.J. Oct. 5, 2010) ……………………….. 8, 9

*Cent. States Se. v. Merck-Medco Managed Care, LLC* (2d Cir. 2007) ……………….. 5

*Connelly v. Hilton Grand Vacations Co.* (S.D. Cal. Oct. 29, 2013) …………………… 16

*Dalton v. FMA Enters.* (M.D. Fla. July 1, 1996) ……………………………………… 14

*Damassia v. Duane Reade, Inc.* (S.D.N.Y. 2008) ……………………………………… 15

*David v. Alphin* (4th Cir. 2013) ……………………………………………………… 8

*Davis v. City of New York* (S.D.N.Y. 2013) …………………………………………... 3

*Dilley v. Acad. Credit, LLC* (D. Utah Sept. 29, 2008) ………………………………… 19

*Gannon v. Network Telephone Services. Inc.* (C.D. Cal. June 5, 2013) ………………. 16

*Gene & Gene, LLC v. BioPay, LLC* (5th Cir. 2008) …………………………………… 16

*Gen. Tel. Co. of the Southwest v. Falcon* (U.S. 1982) ………………………………… 3, 17

*Gomez v. Alexian Bros. Hosp. of San Jose* (9th Cir. 1983) …………………………... 6, 7

*Greenspan v. Brassler* (S.D.N.Y. 1978) …………………………………………….. 14, 15

*Hillis v. Equifax Consumer Servs., Inc.* (N.D. Ga. 2006) ………………………………   19

*In re Trans Union Corp. Privacy Litig.* (N.D. Ill. 2002) ………………………………   18

*Kendall v. Employees Ret. Plan of Avon Prods.* (2nd Cir. 2009) ………………………   7, 8

*Kline v. Coldwell Banker & Co.* (9th Cir. 1974) …………………………………..   19

*Koenig v. Benson* (E.D.N.Y. 1987) ……………………………………………………   14

*Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 42 (D.D.C. 2008) ………...   9

*Landry v. Price Waterhouse Chartered Accountants* (S.D.N.Y. 1989) ………………...   11

*Levitt v. Fax.com* (D. Md. May 25, 2007) …………………………………………….   16

*Lexmark International, Inc., v. Static Control Components, Inc.* (U.S. March 25, 2014)   6

*Leyse v. Bank of America* (S.D.N.Y. June 14, 2010) ………………………………….   9

*Leysoto v. Mama Mia I., Inc.* (S.D. Fla. 2009) ……………………………………….   19

*London v. Wal-Mart Stores, Inc.* (11th Cir. 2003) ……………………………………   18

*Lujan v. Defendants of Wildlife* (U.S. 1992) …………………………………………   5, 6, 7, 8

*Marison A. by Forbes v. Giuliani* (2d Cir. 1997) …………………………………….   10, 11

*Massengill v. Board of Education, Antioch Community High School* (S.D.N.Y. 1978) ..   14

*Miles v. Merril Lynch & Co.* (2d Cir 2006) …………………………………………   10

*Moore v. PaineWebber, Inc.* (2d Cir. 2002) ………………………………………….   15

*Nigro v. Mercantile Adjustment Bureau* (W.D.N.Y. March 11, 2013) ………….…...   2, 3

*Raines v. Byrd* (U.S. 1997) …………………………………………………………….   7

*Ratner v. Chemical Bank New York Trust Co.* (S.D.N.Y. 1972) ………………………   18

*Rios v. Marshall* (S.D.N.Y. 1983) …………………………..…………………………   10

*Seiden v. Nicolson* (N.D. Ill. 1976) …………………………………………………..   15

*Simon v. E. Ky. Welfare Rights Org.* (U.S. 1976) …………………………………...   5

*Spikings v. Cost Plus, Inc.* (C.D. Cal. May 25, 2007) …………………………… 19

*Summers v. Earth Island Inst.* (U.S. 2009) ……………………….......................... 7

*Teamsters Local 445 Freight Div. Pension Fund v. Bombarier, Inc.* (2d Cir. 2008) …. 3, 4

*Valley Forge Christian Coll. v. Americans United* (U.S. 1982) ……………………….. 5, 8

*Waste Mgmt. of N. Am., Inc. v. Weinberger* (9th Cir. 1988) …………………………… 7

*Wein v. Master Collectors, Inc.* (N.D. Ga. Aug. 15, 1995) ……………………………... 14

## <u>RULES</u>

Fed. R. Civ. P. 5.2…………………………………………………………………… 2

Fed. R. Civ. P. 23……………………………………………………………………… 3, 4, 13, 15

## <u>REGULATIONS</u>

7 F.C.C.R. 8752 …………………………………………………………………….. 2

23 F.C.C.R. 559 …………………………………………………………………….. 2

## <u>REPORTS</u>

S. Rep. No. 102-178 (1991) ………………………………………………………… 6

## INTRODUCTION

Between September 2010 and January 2012 a person by the name of Jean Cross provided cellular telephone number (352) 497-2888 to Marion County Fire Rescue on several occasions in connection with ambulance rides taken by her and her son, Jake Cross.  *See* Affidavit of Tammy McCann ¶¶6-7, attached hereto as Exhibit A.   In early February 2012, Marion County Fire Rescue forwarded these accounts to Defendant for collection and provided number (352) 497-2888 as part of the record on the accounts.  *Id.* at ¶7.  Unbeknownst to Defendant, however, Jean Cross was no longer the owner of cellular telephone number (352) 497-2888 since at least August 2011.  *See* D.E. 65 (Plaintiff's Motion for Class Cert.) p. 6.  Between February and May 2012, Defendant placed numerous calls to number (352) 497-2888 seeking to speak with Jean Cross regarding the debt owed.  *See id.* at p. 6-7.  Upon receiving such calls, Plaintiff claims to have notified Plaintiff that he was not the intended recipient and that he should be placed on Defendant's do-not-call list.  *See id.* at p. 6.  Defendant, however, has no record of ever conversing with Plaintiff, let alone being advised that Plaintiff was receiving the telephone calls in error.  *See* D.E. 65-1 (Deposition Transcript of Christopher Rehkow) p. 22, line 8 to line 21; p. 31, line 17 to p. 33 line 14.

Plaintiff now claims that Defendant willfully violated the Telephone Consumer Protection Act (TCPA) by calling Plaintiff on his cellular telephone using an automatic telephone dialing system and/or prerecorded voice, even after Defendant learned that Plaintiff was not the debtor intended to be contacted.  *See* D.E. 65 (Plaintiff's Motion for Class Cert.) p. 6-7.  Plaintiff further seeks to certify a 146,879 member class composed of:

> [A]ll persons within the United States whose cellular telephones were called by [Defendant] using an automatic telephone dialing system with the capacity to store or produce telephone numbers, including, but not limited to, an automated dialing machine, auto-dialer and/or utilizing an artificial or prerecorded voice,

without such persons' prior express consent, between August 31, 2008 and August 31, 2012.

*Id.* at p. 1-2.  In support, Plaintiff relies on its purported expert Jeffrey Hansen, who attests that there are 146,879 members of the class.  *See* D.E. 65-6 (Affidavit of Jeffrey Hansen) ¶¶5-7 ("As a result of my analysis of the Call List provided by the Defendant, I reached the following conclusions: . . . (c) The total number of unique cell phone numbers that were autodialed by the Defendant during the class period was 146,879[.] Accordingly, the number of unique identifiable Class Members during the class period is 146,879.").

In fact, however, the proposed class includes persons who provided their cellular telephone numbers to the creditor for whom Defendant was seeking to collect a debt, in the course of receiving services that resulted in the debt owed.   *See* Affidavit of Christopher K. Rehkow ¶¶10-11, attached hereto as Exhibit B.[1]   Consequently, the proposed class includes persons who expressly consented to receiving future communications regarding their account on the cellular telephone numbers provided.  *See* 7 F.C.C.R. 8752, 8769 (Oct. 16, 1992) ("[P]ersons who knowingly release their phone numbers have in effect given their invitation or permission to be called at the number which they have given, absent instructions to the contrary," and therefore a party does not violate the TCPA "by calling a number which was provided as one at which the called party wishes to be reached."); 23 F.C.C.R. 559, 564 (Jan. 2008) ("[A]utodialed and prerecorded message calls to wireless numbers provided by the called party in connection with an existing debt are made with the 'prior express consent' of the called party.")  Accordingly, with respect to these persons, Defendant cannot be found liable for violation of the TCPA.  *See Nigro v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 34178, at *10-11

---

[1] The exhibits to Christopher Rehkoh's affidavit have been redacted to comply with Fed. R. Civ. P. 5.2 and to remove private health information.  Defendant is happy to file non-redacted versions <u>under seal</u> upon request of the Court.

(W.D.N.Y. March 11, 2013) (holding debt-collector defendant did not violate the TCPA by using an auto dialer to deliver messages with an artificial/prerecorded voice where plaintiff had provided his cell phone number to the creditor for whom the defendant was seeking to collect a debt). For this reason, Plaintiff's purported class is fatally overbroad and class certification must be denied.

## STANDARD

Under FRCP 23(a), the party seeking certification must demonstrate that:

(1) The class is so numerous that joinder of all members is impracticable,
(2) There are questions of law or fact common to the class,
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class, and
(4) The representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as the prerequisites of numerosity, commonality, typicality, and adequacy of representation. *Teamsters Local 445 Freight Div. Pension Fund v. Bombarier, Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008). These requirements are designed to "effectively limit the class claims to those fairly encompassed by the named plaintiff's individual claims." *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (internal quotations omitted).

A plaintiff has the burden of proving each of the requirements of Rule 23. *Davis v. City of New York*, 296 F.R.D. 158, 163 (S.D.N.Y. 2013). A court may approve a class action only after conducting a "rigorous analysis" to ensure plaintiff's compliance with Rule 23. *Gen. Tel. Co.*, 457 U.S. at 161. This "rigorous analysis" recognizes that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Id.* at 160. In assessing whether a plaintiff has satisfied Rule 23, the trial court must take into

account "all of the relevant evidence admitted at the class certification stage." *Teamsters*, 546 F.3d at 202.

One of the three Rule 23(b) criteria must also be concurrently met with the requirements of Rule 23(a).  *See* Fed. R. Civ. P. Rule 23(b).  In the instant case, certification is sought pursuant to Rule 23(b)(3).  Rule 23(b)(3) requires that the plaintiff establish "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Thus, the proposed class must also satisfy Rule 23(b)(3)'s "predominance" and "superiority" requirements.  The predominance requirement has been characterized as "stringent" by the United States Supreme Court.  *See Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 609 (1997).  Importantly, Rule 23(b)(3) "predominance criterion is far more demanding" than the Rule 23(a) commonality requirement, and there is no predominance where "uncommon questions abound[]."  *Id.* at 609, 624.

## ARGUMENT

Class certification is unwarranted in this case for numerous reasons.  First, the Plaintiff has not established Article III standing sufficient to sustain a class action.  Second, the proposed class does not meet the threshold requirement of ascertainability.  Third, Plaintiff's claims are neither common nor typical of the proposed class, particularly with respect to the issue of whether each class member consented to automated calls to his/her cellular telephone.  Fourth, Plaintiff has failed to demonstrate that he is sufficiently familiar with the facts of this case to satisfy Rule 23's adequacy of representation requirement.  Fifth, the issue of individual consent will result in a series of mini-trials in this case.  Sixth, Plaintiff's failure to advance a theory employing generalized proof as to willfulness renders Plaintiff's willfulness claim inappropriate

for class resolution.  And finally, seventh, the class action device is not a superior means of adjudicating the present action, where the damages sought are grossly disproportionate to any harm suffered by Plaintiff.

**I.      THE CLASS ACTION CANNOT BE SUSTAINED BECAUSE PLAINTIFF LACKS ARTICLE III STANDING.**

"To establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will the inquiry shift to a class action analysis." *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, LLC*, 504 F.3d 229, 241 (2d Cir. 2007) (internal quotations omitted); *see also Amador v. Andrews*, 655 F.3d 89, 99 (2d Cir. 2011) ("[A] class action cannot be sustained without a named plaintiff who has standing.").  Congress can enact statutes that create new rights, and Congress can create remedies for those rights, but Congress cannot abrogate the constitutional principle of standing altogether: "broadening the categories of injury that may be alleged in support of standing is a different matter from abandoning the requirement that the party seeking review must himself have suffered an injury." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 39 (1976).  The requirement of injury in fact – "that the party seeking review be himself among the injured" – is an "irreducible constitutional minimum" without which a federal court lacks jurisdiction.  *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560, 563 (1992).  To abandon that requirement "would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 473 (1982) (internal quotations omitted).

To establish standing, a plaintiff must plead and prove an "injury in fact;" that is, an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or

imminent, not conjectural or hypothetical.  *Lujan*, 504 U.S. at 560.  Plaintiff, however, alleges no facts that establish a cognizable injury sufficient to satisfy the "irreducible constitutional minimum of standing."  *Lujan*, 504 U.S. at 560.  In enacting the TCPA, Congress sought to "protect the privacy interests of residential telephone subscribers" and to prevent businesses from shifting the costs of advertising to the consumer by forcing the consumer to pay for ink, paper, or the cost of a telephone call.  S. Rep. No. 102-178, at *1-2 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968.  Congress cited serious consumer complaints, including tying up telephone lines and preventing emergency calls, crowding other messages out of answering machines, and imposing costs on the called party.  *Id.* at *2.

Plaintiff fails to allege he incurred any of the harms the TCPA was intended to prevent. Consequently, Plaintiff fails the "zone of interests" test.  *See Gomez v. Alexian Bros. Hosp. of San Jose*, 698 F.2d 1019, 1020-21 (9th Cir. 1983) ("Standing to assert statutory rights has two requirements.  The first is the Article III minima of injury in fact . . . . [t]he second is that the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute." (internal quotations omitted)).  "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"  *Lexmark International, Inc., v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 (March 25, 2014) (*citing Allen v. Wright*, 468 U.S. 737, 751 (1984)).  The "zone of interests" formulation applies to all statutorily created causes of action, as it is a "requirement of general application."  *Id.*   The absence of an injury falling within the zone of interests protected by the TCPA prevents standing regardless of whether Plaintiff suffered any other injury.

Plaintiff, however, fails to allege he incurred any injury at all.  *See* D.E. 1 (Complaint) & D.E. 28 (Amended Complaint).  Indeed, the record reflects that Plaintiff suffered no monetary

expenses as a result of the alleged phone calls. *See* D.E. 65-7 (Plaintiff's Deposition Transcript) p. 42, line 22 to p. 43, line 2. Moreover, no medical attention was sought by Plaintiff, for stress or otherwise, as a result of the alleged phone calls. *See id.* at p. 45, line 16 to p. 46, line 2.; p. 47, line 5 to p. 48, line 6. Because Plaintiff fails to allege he personally suffered any actual harm, Plaintiff is left to rely only on the TCPA's statutory damages provision for Article III standing. The Supreme Court, however, has repeatedly held Congress lacks the power to create Article III standing absent injury in fact. That the TCPA allows for statutory damages does not excuse Plaintiff's need to allege, and ultimately prove, an actual injury in fact. *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is the hard floor of Article III jurisdiction that cannot be removed by statute.").

   The Supreme Court has reaffirmed time and again that Article III standing "is a bedrock requirement." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). Because Article III creates a "bedrock requirement," a plaintiff "must allege some injury of deprivation of a right, even if that right is statutorily created." *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112, 119 (2nd Cir. 2009); *see also Gomez*, 698 F.2d at 1020-21 (even when a plaintiff asserts a statutory violation, he still must allege "the Article III minima of injury in fact"); *Waste Mgmt. of N. Am., Inc. v. Weinberger*, 862 F.2d 1393, 1397-98 (9th Cir. 1988) ("[I]t is not enough that a litigant alleges that a violation of federal law has occurred; the litigant must have standing to invoke the federal court's power. Absent injury, a violation of a statute gives rise merely to a generalized grievance but not to standing." (citations omitted)); *Raines*, 521 U.S. at 820 n.3 ("Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."); *Lujan*, 504 U.S. at 576 (statute creating a right to sue does not permit a court to "ignore the concrete injury requirement" for standing). Thus, even after

Congress authorizes suit, Article III's requirement remains, and the plaintiff must still allege a distinct and palpable injury to himself.

Appellate courts that have delved into the standing jurisprudence with respect to statutory violations have held that an uninjured plaintiff lacks constitutional standing. *See David v. Alphin*, 704 F.3d 327, 338-39 (4ᵗʰ Cir. 2013) (finding that statutory standing and constitutional standing are distinct requirements, and that the court only has subject matter jurisdiction over a statutory claim where the plaintiff has both statutory and constitutional standing); *Kendall*, 561 F.3d at 121 (2d Cir. 2009) ("While plan fiduciaries have a statutory duty to comply with ERISA . . . [plaintiff] must allege some injury or deprivation of a specific right that arose from a violation of that duty in order to meet the injury-in-fact requirement."). Congress cannot eliminate the standing requirement of Article III simply by creating a legal right. *See, e.g.*, *Valley Forge Christian Coll.*, 454 U.S. at 487 n.24 (no "congressional enactment[] can lower the threshold requirements of standing under Art. III"). Here, Plaintiff has not satisfied Article III simply by alleging Defendant violated the TCPA. Plaintiff must allege a concrete and particularized injury to himself to satisfy Article III's standing requirements. *Lujan*, 504 U.S. at 560. Because Plaintiff has not, the class action cannot be sustained and Rule 23's requirements need not even be considered.

Plaintiff further lacks standing under the TCPA because Plaintiff cannot establish that he was the "called party" under the TCPA. The term "called party" under the TCPA refers to the "intended recipient" of the call. *Cellco P'ship v. Wilcrest Health Care Mgmt.*, 2012 U.S. Dist. LEXIS 64407, *18 (D.N.J. May 8, 2012) ("A burgeoning body of case law establishes that only the 'called party,' i.e., the 'intended recipient,' has statutory standing to bring suit under the TCPA."); *see also Cellco P'ship v. Dealers Warranty, LLC*, 2010 U.S. Dist. LEXIS 106719,

*35-36 (D.N.J. Oct. 5, 2010) (finding telecommunications vendors failed to adequately allege standing for their TCPA claim for calls made to numbers assigned to their employees/subscribers where vendors did not sufficiently allege that they—and not their employees/subscribers—were the "intended recipients" of the calls); *Kopff v. World Research Group, LLC*, 568 F. Supp. 2d 39, 42 (D.D.C. 2008) (concluding plaintiff had no standing to assert TCPA claim for intercepting an unsolicited fax advertisement intended for plaintiff's husband).  For example, in *Leyse v. Bank of America*, a plaintiff filed a putative TCPA claim after he answered the telephone and heard a prerecorded message from Bank of America intended for his roommate.  *Leyse v. Bank of America*, 2010 U.S. Dist. LEXIS 58461, at *4 (S.D.N.Y. June 14, 2010), *aff'd* 2013 U.S. App. LEXIS 8297 (Apr. 24, 2013).  The Court dismissed the complaint for lack of subject matter jurisdiction after determining that plaintiff was not the "called party" and thus, lacked standing to sue.  *Id.* at *16.  The court explained that:

> If Bank of America had the prior express consent of [the roommate] to place a call to her residence, it would be free to call [the roommate] regardless of whether [she] was the residential telephone subscriber. To find otherwise would mean that when a business calls a person with a prerecorded message, that business could be liable to any individual who answers the phone despite the fact that the business only intended to call one person.

*Id.* at *15-16.

Here, Plaintiff readily admits that he was not the "intended recipient" of the calls.  *See* D.E. 1 (Complaint) p. 2-4 (call intended for "Gene Cause"); D.E. 28 (Amended Complaint) ¶¶12-13 (same).  As Plaintiff was not the "intended recipient" of the calls at issue in this case, he is not a "called party" and thus, lacks standing to bring a TCPA claim on this basis as well.  If the court were to hold otherwise, a business would be forced to obtain proof that a consumer was the legal subscriber to a telephone line when obtaining their consent to call.  Such a result would not only be a practical impossibility, but unnecessarily onerous and cost prohibitive.

## II.  THE PROPOSED CLASS IS NOT SUFFICIENTLY ASCERTAINABLE FOR PURPOSES OF PRELIMINARY CERTIFICATION.

Implied in Rule 23 is a requirement that there be a "class."  *See Miles v. Merril Lynch & Co.*, 471 F.3d 24, 30 (2d Cir. 2006) (referring to the "implied requirement of ascertainability"). "Although Rule 23 does not expressly discuss the need to define a class with specificity, it nevertheless has been held that a proposed class must be clearly defined in order to make it administratively feasible for the court to determine whether a particular individual is a member." *Rios v. Marshall*, 100 F.R.D 395, 402 (S.D.N.Y. 1983) (internal quotations omitted).  Plaintiff defines the proposed class as persons who received automated calls to their cellular telephones "without such persons' prior express consent."  *See* D.E. 65 (Plaintiff's Motion for Class Cert.) p. 2.  Plaintiff, however, did not factor into his analysis whether any of the claimed 146,879 class members actually provided consent.  *See* D.E. 65-6 (Affidavit of Jeffrey Hansen) ¶¶5-7 ("As a result of my analysis of the Call List provided by the Defendant, I reached the following conclusions: . . . (c) The total number of unique cell phone numbers that were autodialed by the Defendant during the class period was 146,879[.]   Accordingly, the number of unique identifiable Class Members during the class period is 146,879.").  Determining which of the proposed 146,879 class members provided consent in this case would be a massive undertaking, which is not "administratively feasible" for this Court.  And as stated *supra*, at least some of the proposed class member did in fact provide consent to be contacted on their cellular telephones. Accordingly, the proposed class does not meet the threshold requirement of ascertainability.

## III.  PLAINTIFF'S CLAIMS ARE NEITHER COMMON NOR TYPICAL OF THE PROPOSED CLASS.

"The commonality and typicality requirements tend to merge into one another, so that similar considerations animate analysis of Rules 23(a)(2) and (3)."  *Marison A. by Forbes v.*

*Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). "The crux of both requirements is to ensure that maintenance of a class action is economical and [that] the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Id.* The named plaintiff's claims are "typical" pursuant to Rule 23(a)(3) where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Id.* The test is whether defenses will become the focus of the litigation, thus overshadowing the primary claims, and prejudicing other class members. *See Landry v. Price Waterhouse Chartered Accountants*, 123 F.R.D 474, 476 (S.D.N.Y. 1989).

Here, Plaintiff alleges a common course of conduct, automated calls to cellular telephones, but does not advance a theory as to how the common course of conduct provides a class-wide basis for deciding issues of fact and law. Indeed, Plaintiff fails to carry his burden of establishing commonality and typicality as to the proposed class because he fails to take into account the fact that many of the proposed class members provided consent. As established *supra*, the proposed class includes members who provided prior express consent. The fact that proposed members of the class are subject to the consent defense renders Plaintiff's claims atypical of the proposed class. Consequently, the legal claims identified by Plaintiff in his Complaint do not affect every member of the proposed class.

The unique defense against certain proposed class members' claims compromises the common question of whether, as Plaintiffs alleges, Defendants systematically violated the TCPA by placing automated telephone calls to proposed class members. In reality, Defendant's actions or inactions are isolated to discrete instances and thus the alleged "pattern of behavior" does not

commonly affect all of the proposed class members.  Furthermore, whether Defendant acted knowingly and/or willfully with respect to each proposed class member cannot be determined on a class-wide basis without individual inquiry into the circumstances surrounding each proposed class member.  It cannot be assumed that each proposed class member notified Defendant he/she was not the intended recipient of the call and/or requested that calls cease, as Plaintiff alleges here.  As such, Plaintiff's willfulness claim is atypical of the proposed class members, and thus incapable of economic resolution on a class wide basis.

Additionally, in this case, Plaintiff was not the intended recipient of the call.  It is clear that Defendant was attempting to reach and had consent to call Jean Cross, the person who tendered the cellular telephone number to Defendant's client.  Like Jean Cross, proposed class members also provided their telephone numbers to the original creditor at the time the debts were incurred as shown by the sampling of consents provided by Defendant.  *See* Exhibit B.  Thus, Plaintiff, a "wrong number" plaintiff, does not have a claim that is typical of the purported class members.  *Buonomo v. Optimum Outcomes, Inc.* is identical to the facts of this case and thus instructive.  In *Buonomo*, the plaintiff alleged that the defendant collection company called his cell phone number numerous times via an automated dialing system, seeking to speak to a debtor with whom plaintiff had no relationship.  *Buonomo v. Optimum Outcomes, Inc.*, 2104 U.S. Dist. LEXIS 33973, at *2 (N.D. Ill. March 17, 2014).  The plaintiff notified defendant that it was calling the wrong number, yet plaintiff continued to receive phone calls and prerecorded messages.  *Id.*  The plaintiff filed a class action, seeking to represent a proposed class of individuals who received similar calls and who did not provide their cellular telephone numbers to defendant or the creditor with respect to the debt at issue.  *Id.* at *8.  The court held that plaintiff's proposed class failed to satisfy Rule 23(a)(3)'s typicality requirement because his

"wrong party" claim lacked the same essential characteristics as the claims of actual debtors included in the proposed class. *Id.* at *12-13.

## IV. PLAINTIFF HAS FAILED TO DEMONSTRATE THAT HE IS FAMILIAR WITH THE FACTS OF HIS CASE SUFFICENT TO SATISFY RULE 23's ADEQUACEY OF REPRESENTATION REQUIREMENT.

Rule 23(a)(4) requires that the class representative fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a)(4).  "Generally, the adequacy requirement focuses on the competency of class counsel, but it is clear that some inspection of the individual representative is required."  *Byes v. Telecheck Recovery Servs.*, 173 F.R.D. 421, 425-26 (E.D. La. 1997).  While a class representative need not understand the meaning of complex legal terms or direct litigation strategies, a representative should, however, have some awareness of the basic facts underlying the suit.

Plaintiff's deposition testimony demonstrates that Plaintiff lacks even a basic knowledge of the proceedings and details of his case.  Plaintiff did not meet his attorneys until long after the action had been filed.  *See* D.E. 65-7 (Plaintiff's Deposition Transcript) p. 33, line 22 to p. 34, line 22.  Plaintiff did not review the pleadings before they were filed with the Court, nor is he aware of other legal documents filed with the Court.  *Id.* at p. 38, line 14-17 (Plaintiff had never seen amended complaint prior to deposition); p. 38, line 18-20 (when asked about the original complaint in the lawsuit, Plaintiff responded "I don't know what you're talking about"); p. 38, line 21-23 (Plaintiff had never seen any legal document in connection with the case prior to his deposition).  Indeed, Plaintiff is not even aware of the allegations contained in the pleadings, including what the TCPA is.  *See e.g.*, *id.* at p. 17, line 21-24 (Plaintiff not familiar with the TCPA); p. 49, line 5-7 (Plaintiff had never heard name "Jean Cause" (sic) before his deposition); p. 52, line 1-5 (same); p. 62, line 5-10 (Plaintiff unaware complaint contained allegations

regarding "Jean Cause" (sic)).  Nor is Plaintiff aware that the lawsuit was initially filed in Florida.  *See id.* at p. 64, line 6-21.  Most importantly, Plaintiff does not even know who the Defendant is in this case.  *Id.* at p. 21, line 15-20 (Plaintiff became aware of NCSPlus, Inc. for the first time on day of deposition); p. 39, line 17-19 (same); p. 40, line 15-17 (same).

The record reflects that Plaintiff lacks even a basic knowledge of the case and has relinquished unfettered control over this case to his lawyers.  Plaintiff likely is not even aware that he has any duties as a class representative; let alone what those duties might be.  Courts have found on numerous occasions such unfamiliarity with the case inadequate for a proposed representative.  *See e.g., Butterworth v. Quick & Reilly, Inc.*, 171 F.R.D. 319, 323 (M.D. Fla. 1997) ("plaintiff fails to demonstrate that she is familiar with the facts of the current case sufficiently enough to represent the proposed class"); *Dalton v. FMA Enters.*, 1996 U.S. Dist. LEXIS 9340, 1996 WL 379105, at *17 (M.D. Fla. July 1, 1996) ("Plaintiff fails to demonstrate that she is familiar with the facts of her case sufficiently enough to represent the proposed class."); *Wein v. Master Collectors, Inc.*, 1995 U.S. Dist. LEXIS 21622, 1995 WL 550475, at *7 (N.D. Ga. Aug. 15, 1995) ("if the class representative's participation in the litigation is so minimal that she has essentially abdicated her role as representative to class counsel, class certification is properly denied"); *Koenig v. Benson*, 117 F.R.D. 330, 337 (E.D.N.Y. 1987) (stating that a class representative was inadequate where the class representative did not read complaint before it was filed, and the representative's understanding of the cause of action was weak); *Massengill v. Board of Education, Antioch Community High School*, 88 F.R.D. 181, 186 (S.D.N.Y. 1978) (holding that representative was inadequate where she lacked awareness about the class and at least some knowledge of the essential issues of the case); *Greenspan v. Brassler*, 78 F.R.D 130, 133 (S.D.N.Y. 1978) (plaintiffs found inadequate where they demonstrated an

"alarming unfamiliarity" with the suit); *Seiden v. Nicolson*, 69 F.R.D. 681, 689 (N.D. Ill. 1976) ("[T]he depositions of [plaintiffs' reveal a significant lack of knowledge regarding the suit they seek to pursue as representatives.  This court is of the opinion that the class they attempt to represent is entitled to better protection and, therefore, it is determined that these individuals are inadequate class representatives.").

It should also be noted that Plaintiff is relying on his attorneys to advance the costs of litigation.  *See* D.E. 65-7 (Plaintiff's Deposition Transcript) p. 35, line 21-24.  As such, Plaintiff's attorneys may ultimately be faced with a conflict of interest because they will be driven by their own economic motivations.  This potential conflict along with Plaintiff's unfamiliarity with the facts of this case, prevents Plaintiff from adequately protecting the interests of the class.  Accordingly, this Court should find Plaintiff does not satisfy Rule 23's adequacy requirement.

## V.   THE PREDOMINANT ISSUE OF FACT IS UNDOUBTEDLY ONE OF INDIVIDUAL CONSENT.

In addition to satisfying the four requirements of Rule 23(a), to qualify under Rule 23(b)(3), Plaintiff must show that for the proposed class "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Products, Inc. v. Windsor*, 521 U.S. 592, 623 (1997).  Although similar to commonality, predominance is "more demanding" and "requires not only that there be disputed issues that can be resolved through 'generalized proof,' but also that 'these particular issues are more substantial than the issues subject only to individualized proof.'"  *Damassia v. Duane Reade, Inc.*, 250 F.R.D. 152, 159 (S.D.N.Y. 2008) (quoting *Moore v. PaineWebber, Inc.*, 206 F.3d 1247, 1252 (2d Cir. 2002)).

In *Gene & Gene, LLC v. BioPay, LLC*, the Fifth Circuit reversed, on the basis of predominance, a district court's class certification in a purported class action brought under the TCPA by the recipient of unsolicited fax advertisements.  *See Gene & Gene, LLC v. BioPay, LLC*, 541 F.3d 318 (5th Cir. 2008).  The Circuit Court explained that the district judge had mistakenly concluded that the case "would not degenerate into a series of individual trials."  *Id.* at 326.  The Fifth Circuit concluded that "one substantive issue undoubtedly will determine how a trial on the merits will be concluded if the proposed class is certified," which the court identified as being whether defendant's "fax advertisements were transmitted without the prior express invitation or permission of each recipient."  *Id.* at 327.  The court noted that "the predominant issue of fact is undoubtedly one of individual consent."  *Id.*  The court concluded that the plaintiff had "failed to advance any viable theory employing generalized proof concerning the lack of consent with respect to the class . . . lead[ing] to the conclusion that myriad mini-trials [could not] be avoided."  *Id.* at 329.  As a result, the Fifth Circuit held that the district court abused its discretion in certifying the class.  *Id.*  Other courts have ruled in kind that individualized inquiries relating to consent prohibit a finding of predominance in a class certification analysis. *See e.g.*, *Connelly v. Hilton Grand Vacations Co*., LLC, 2013 U.S. Dist. LEXIS 157951 (S.D. Cal. Oct. 29, 2013) (denying class certification of TCPA case due to individualized inquiries relating to consent that prevented finding of predominance); *Gannon v. Network Telephone Services. Inc*., 2013 U.S. Dist. LEXIS 81250 (C.D. Cal. June 5, 2013) (denying class certification due to individualized inquiries present that prevented finding of predominance); *Levitt v. Fax.com*, 2007 U.S. Dist. LEXIS 83143 (D. Md. May 25, 2007) (denying TCPA class action certification due to individualized determination required to determine issue of "consent").

*Gene* is instructive here.  Defendant has introduced evidence that at least some of the proposed class members provided consent.  As in *Gene*, it seems unavoidable that the Court will have to conduct a series of mini-trials to determine whether each prospective class member gave consent.  The Court will necessarily have to review the underlying documents of each debt along with the account notes on each account to determine if consent was indeed provided.  It will have to do so both to establish the population of the class and to determine liability.  Thus the evidence in the record suggests that the Court will have to determine the fact of consent by reference to the characteristics of individual prospective class members. Because Plaintiff has failed to establish that the Court could determine the fact of consent largely, or solely, by reference to Defendant's practices alone, the proposed class fails the predominance requirement as well.

## VI.   PLAINTIFF'S WILLFULNESS CLAIM IS NOT APPROPRIATE FOR CLASS RESOLUTION.

As to the class, Plaintiff seeks to establish willful violations of the TCPA to recover treble damages for each and every violation.  *See* D.E. 1 (Complaint) p. 9.  Plaintiff, however, has not informed the Court what litigation of willful claims under the TCPA would involve, information which is necessary for the Court to rule on Plaintiff's Motion.  A class certification decision requires an examination of the factual and legal allegations to determine whether the alleged claims can properly be resolved as a class action. *See Gen. Tel. Co.*, 457 U.S. at 160 (recognizing that "sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1195 (2013) (merits may be considered to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied). Plaintiff's utter failure to advance a theory employing generalized proof as to willfulness leads to

the conclusion that countless mini-trials cannot be avoided.  Indeed, as discussed *supra*, whether Defendant acted knowingly and/or willfully with respect to each proposed class member cannot be determined on a class-wide basis without individual inquiry into the circumstances surrounding each proposed class member.

### VII.   THE CLASS ACTION DEVICE IS NOT SUPERIOR IN THIS CASE, WHERE DEFENDANT'S POTENTIAL LIABILITY WOULD BE ENORMOUS AND COMPLETELY OUT OF PROPORTION TO ANY HARM SUFFERED BY PLAINTIFF.

In cases where "the defendant's potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff," the court is likely to find that individual suits, rather than a single class action, are the superior method of adjudication.  *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003); *see also In re Trans Union Corp. Privacy Litig.*, 211 F.R.D. 328, 350-51 (N.D. Ill. 2002) (finding class action lacked superiority in part because of due process concerns where statutory damages would be "grossly disproportionate" to any actual damage suffered by plaintiffs).  In *Ratner*, the court denied class certification under Rule 23(b)(3) for a class seeking sizable aggregated statutory damages. *Ratner v. Chemical Bank New York Trust Co.*, 54 F.R.D. 412 (S.D.N.Y. 1972).  The court found "cogent and persuasive" the defendant's argument that "the proposed recovery of $100 each for some 130,000 class members would be a horrendous, possibly annihilating punishment, unrelated to any damage to the purported class or to any benefit to defendant."  *Id.* at 416 (holding "[i]t is not fairly possible in the circumstances of this case to find the (b)(3) form of class action 'superior []'").

A number of courts have followed the reasoning in *Ratner*.  For example, in *Kline v. Coldwell Banker & Co.*, the Ninth Circuit held that class actions are not superior when the damages would be so great that certification would lead to an "ad absurdum result" and would

"shock the conscience." *Kline v. Coldwell Banker & Co.*, 508 F.2d 226, 233-35 (9th Cir. 1974). Damages can be found disproportionately large when, for example, the amount of damages exceeds the defendant's net worth, putting the defendant out of business. *See e.g.*, *Leysoto v. Mama Mia I., Inc.*, 255 F.R.D. 693, 697-98 (S.D. Fla. 2009) (denial of class certification where damages ranged from $4.6 million to $46 million and defendant's net worth was only $40,000); *Dilley v. Acad. Credit, LLC*, 2008 U.S. Dist. LEXIS 75963, at *26-27 (D. Utah Sept. 29, 2008) (denying class certification where damages sought would put defendant out of business); *Spikings v. Cost Plus, Inc.*, 2007 U.S. Dist. LEXIS 44214, at *12-13 (C.D. Cal. May 25, 2007) (denying class certification where damages ranged from $340 million to $3.4 billion, but defendant's net worth was only $316 million). Even if the damages would not put a defendant out of business, courts can still find the exposure to be disproportionately high and therefore deny class certification. *See e.g.*, *Hillis v. Equifax Consumer Servs., Inc.*, 237 F.R.D. 491, 507 (N.D. Ga. 2006) (holding superiority requirement not satisfied).

Here, Plaintiff has not alleged any actual damages, but seeks a recovery of $500 to $1,500 per violation with respect to 146,879 class members. Thus, potential liability exceeds $73 million dollars (at the low end), a staggering amount well above Defendant's net worth.[2] Such an award undoubtedly constitutes "horrendous, possibly annihilating punishment," completely unrelated to any damage suffered by Plaintiff. Following the reasoning in *Ratner*, the class action device is not the superior method of adjudicating the present action and therefore class certification under Rule 23(b)(3) must be denied.

---

[2] The Court has already been provided, in related proceedings, substantial evidence that Defendant's net worth is minimal. *See* D.E. 68.

## CONCLUSION

Plaintiff's claims are not appropriate for class resolution. Namely, Plaintiff lacks standing to bring a TCPA claim and Plaintiff cannot satisfy the requirements of Rule 23. For these reasons, Plaintiff's Motion for Class Certification should be denied.

Dated: August 15, 2014

Respectfully submitted,

/s/ Nicole M. Strickler
Nicole M. Strickler
Attorney #6298459 (IL)
Attorney for Defendant
Messer & Stilp, Ltd.
166 W. Washington, Suite 300
Chicago, IL 60602
(312) 334-FIRM (3476)
(312) 334-3404 (fax)
strickler@messerstilp.com
PRO HAC VICE PENDING

/s/ Mark Krassner
Mark Krassner (MK9317)
Attorney for Defendant
Law Office of Mark Krassner
377 Broadway, 4th Floor
New York, NY 10013
(212) 431 1300
(212) 965-2612
mark@krassnerlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 15, 2014, I electronically filed the foregoing with the Clerk of the District Court using the CM/ECF system, which will send notification of such filing to the attorneys of record.

<u>/s/ Mark Krassner</u>
Krassner (MK9317)
Attorney for Defendant
Law Office of Mark Krassner
377 Broadway, 4th Floor
New York, NY 10013
(212) 431 1300
(212) 965-2612
mark@krassnerlaw.com